FILED

## U. S. District Court for the Eastern District of Virginia
### Alexandria Division

2016 SEP 19   A 11: 55

C............................T

Carl Raymond Amos   )
        (Carl R. Amos)   )
                       )
        Plaintiff,     )
          v.            )
SMITHSONIAN INSTITUTION,  )
                      )
        Defendant.   )
                      )

Civil Action No. *1:16 CV 1191*

*GBL/TCB*

## COMPLAINT

Plaintiff, Carl Raymond Amos, files this Complaint for Temporary Restraining Order and Preliminary Injunctive Relief, monetary and other damages and costs against Defendant Smithsonian Institution and as good grounds state as follows.

### I.  Cause of Action

1.  This cause of action arises out of Defendant's violation of US Trademark, US Copyright and US Patent Infringement Laws, wherein the Defendant Smithsonian Institution knowing received misappropriated, stolen Intellectual Property (IP): Trademarks, Registered Architectural Works and Patents.  Currently and on the grand opening of the Smithsonian New Museum of African American History and Culture, the Defendant plans entail diluting Plaintiff's US Trademarks, Copyrights and patents in violation of US IP [Rights] Laws.

    a.  The Defendant, the Smithsonian Institution, hereinafter know as the Smithsonian, received stolen goods [Sic, museum design] Trademark and Registered Copyrighted Architectural Works as part of their Design Competition for New Museum of African American History and Culture (NMAAHC). Of the six firms invited to participate in a two-month design competition or contest, the winner of the design competition, announced, by the design competition jury, three firms joined together for this project, hereinafter known as "the Group".

    In the weeks following the exhibit of entrants, a competition board, or jury, selected the firm, the Group, presenting the final design of the museum.

    b.  The Design Competition rules (Rules) for the NMAAHC state on page 30:

    "6. Ownership of Competition Submittals

    With the exception of previously patented, trademarked, or copyrighted material, by providing a

Design Concept Submittal for evaluation by the Jury, each firm is deemed to agree that the Smithsonian owns and holds all proprietary rights, including copyright, in all drawings, documents, models and materials submitted for the Design Competition and any design concepts expressed therein (excluding firm brochures, and any designs or materials related to other project included as examples or for references to the firm's work with other clients). ..." *See Exhibit A.*

c.  The Defendant was given notice in 2009 and 2012-2013, *see Exhibits B1-2,* that the selected Design Concept Submittal was the Plaintiff's IP: Trademarks, Architectural Work Copyrights which is protected by the Architectural Works Copyright Act sponsored by George Bush Sr., 1990, and issued US Patent. *See Exhibits C1-3.*

d.  The Group's main architectural firm during this time was insolvent. *See Exhibit D.*

e.  The Plaintiff requested by virtue of the Freedom of Information Act from the Smithsonian Institution's Office of General Counsel in December of 2015 for any documents the Group submitted registered 'Architectural Works Copyrights' number and dates  and or any copies of the 'sworn affidavits' with signatures swearing the work is theirs.  The response stated, "A records search was conducted, and we have no such records responsive to [my] request". *See Exhibit E.* Then the statement refers to the rules as referred to in § I.1.b above.

2.  The cause of action further derives from the Defendant demonstrating willful negligence and disregard of US IP Law and International IP Laws in dismissing Plaintiff notification about his IP to the Defendant.

a.  Defendant were fully made aware noticed by Plaintiff during Christmas-New Year's Season 2012-2013, *see Exhibit B2,* of theft but refused to intervene against its own charter and preceded to collude with its contractor fully cognizant that crimes were being committed and laws were being broken.

b.  Defendant were in violation of its own Rules when they knowingly and continued the construction of the NMAAHC, wherein the Smithsonian had exceptions in their rules for "...previously, trademarked or copyrighted or patented material...," in accepting the stolen materials as their own.

c.  The Smithsonian is also in violation of RICO acts and in general IP Governance principal practices in accepting "...previously, Trademarked or registered Copyrighted Architectural Works, patented material..." without provisions in the Rules for compensation for ownership of, due diligence to discover, or recognition of IP Ownership and or Rights thereof.

3.  The cause of action arose when the Smithsonian failed to investigate the then insolvent bankrupt
    Architectural firm for any untoward criminal activities but did accept a warrant made by the
    SmithGroup construction company of the legitimacy of their Group's claims of ownership. *See Exhibit
    F* (the Group warrant). The Smithsonian was directly alerted by the Plaintiff as to theft and fraud by
    the insolvent and unscrupulous Group in 2012-2013. *See Exhibit B2.*

4.  The cause of action lastly arises out of the Defendant engaging in fraud and theft of property and is
    attempting to subvert the Trademark, Copyright and Patent systems.

## II. Venue/Jurisdiction

1.  This court is the correct venue and has jurisdiction and or Substantive Jurisdiction for US registered
    and or common law Trademarks Tort issues for Temporary Restraining Order and Emergency and or
    Preliminary Injunctions against Defendant Smithsonian Institution based upon "The Lanham
    (Trademark) Act (Pub.L. 79-489, 60 Stat. 427, enacted July 5, 1946, codified at 15 U.S.C. § 1051 et
    seq. (15 U.S.C. ch. 22)) is the primary federal trademark statute of law in the United States. The Act
    prohibits a number of activities, including trademark infringement, trademark dilution, and false
    advertising" whereas the US Court of Federal Claims ruled that it did not have jurisdiction in this
    matter. *See Exhibit G.*

    This trademark law protects a trademark owner's exclusive right to use a trademark when use of the
    mark by another would be likely to cause consumer confusion as to the source or origin of goods. To
    establish a violation of the Lanham Act for either a registered mark under 15 U.S.C.

2.  This court is the correct venue and has jurisdiction and or Substantive Jurisdiction based upon the
    1946 Federal Tort Claims Act (FTCA) (60 Stat. 842) removed the inherent Immunity of the federal
    government from most TORT actions brought against it and established the conditions for the
    commencement of such suits.

    The FTCA permits persons to sue the government of the United States in federal court for
    "...money damages,...for injury or loss of property, or personal injury or death caused by the negligent or
    wrongful act or omission of any employee of the Government while acting within the scope of his office or
    employment, under circumstances where the United States, if a private person, would be liable to the claimant
    in accordance with the law of the place where the act or omission occurred. (28 U.S.C.A. § 1346(b))"
    In passing the FTCA, Congress allowed the federal government to be sued. And it is recourse for
    persons who had been injured by government Negligence, willfully or by omission. Congress passed
    the FTCA a more effective way to deal with the problem.

### III. Argument

1. The Plaintiff owns the original Trademarks, original registered Architectural Work Copyrights and Patents to the Smithsonian NMAAHC image and structure and Lens technology, wherein the Trademark," Jwahmose", name, dating back several decades are incontestable. The Plaintiff has as he must police and enforce his US and Switzerland (Madrid protocols) Trademarks; and enforce his global IP rights so as not to allow a dilution and or infringement of his registered Trademarks, Copyrights and Patents.

   a. The Plaintiff, Carl R. Amos, has been awarded the Registered US Trademarks to both Image form of building New Smithsonian (Jwahmose Museum Trademark) US Patent & Trademarks Office and registered Architectural Works the United States Copyright Office respectively for the Jwahmose Museum, the so-called Smithsonian NMAAHC (New Museum of African American History and Culture and Patents US 9,128,461, 2015 and US 5,369,511, 1994 3D Lens Technology).

   b. Plaintiff did file a Complaint in 2012 with FBI and alerted Smithsonian Ombudsman of the theft and conspiracy emanating from the winners of the contest for the design of the NMAAHC. The Office of the President in 2009, *see Exhibit B1,* was informed of his registered Architectural Works Copyrights and related Patents. *See Exhibits C1-3.*

2. The pleading goes as follows:

   a. Defendant willfully received and accepted stolen Plaintiff's Intellectual Property (IP) and willfully assisted, aided and abetted, the Group in their scheme to pass off the Plaintiff's IP as their own including theft by taking; thereby allowing the Smithsonian and thusly the Federal Government to seize Defendant Life's work and IP by force. Whereas through the use of the Contest published misconceptions and deceptions as to the true origin of the winning design, the Defendant then and now are fully knowledgeable of their illegal actions both under US Law and International Law, Berne Treaty.

   b. With the Defendant it is certain that if their assigns, the winning Group play the race card well enough the Smithsonian can effectively permanently rob the Plaintiff of his property. The Defendant by using this ruse to misappropriate and gain with or without profit, however being in anticipation of future profits, in violation of the RICO Act.

   c. The Group's member Architects had the motive of desperation, since they were insoluble bankrupt just before the public announcement of the design competition to attempt to run a scam and commit theft which as of now has run in their favor.

   d. The Defendant was made aware of theft of Plaintiff's Trademarks, registered Architectural Works and patents in 2012, *see Exhibit B2,* before full construction of New Jwahmose now New Smithsonian Museum in Washington DC commenced.

   e. The desperate and bankrupt/insolvent Architects and desperate greedy Contractors passing off stolen IP as their own and receiving party Defendant Smithsonian accepted stolen property willfully and with negligence and currently anticipates a windfall of future earnings thus its stolen acquired property which is violation of RICO statues.

## IV. Table of Authorities

1. Under the Federal Intellectual Property Laws: the Copyright Act of 1976, the Patent Act of 1952, the Trademark Act of 1946 (conventionally known as the Lanham Act), and the Economic Espionage Act of 1996:

   a. 17 U.S.C. § 501 (copyright infringement);

   b. 17 U.S.C. § 506(a)(1)(A) and 18 U.S.C. § 2319(b) (criminal copyright infringement for profit);

   c. 17 U.S.C. § 506(1)(B) and 18 U.S.C. § 2319(c) (criminal copyright infringement without a profit motive);

   d. 15 U.S.C. § 1114(1) (unauthorized use in commerce of a reproduction, counterfeit, or colorable imitation of a federally registered trademark);

   e. 15 U.S.C. § 1125(a) (trademark infringement due to false designation, origin, or sponsorship);

   f. 28 U.S.C. § 1498 (unauthorized use of a patented invention by or for the United States, or copyright infringement by the United States).

2. Racketeer Influenced and Corrupt Organizations Act, RICO Act, 18 U.S. Code § 1962(c);

   a. see also Criminal RICO Prosecutors Manual, elaborating that "A Defendant May Be Liable for a RICO Conspiracy Offense Even if the Defendant Did Not Participate In the Operation or Management of the Enterprise"; www.justice.gov/usao/eousa/foia_reading_room/usam/title9/rico.pdf;

   b. "As the Supreme Court noted in *National Organization for Women, Inc. v. Scheidler*, 510 U.S. 249, 259 n.5 (1994), one commentator has used "the terms 'prize,' 'instrument,' 'victim,' and 'perpetrator' to describe the four separate roles the enterprise may play in § 1962." (citing G. Robert Blakey, "en.wikipedia.org/wiki/G._Robert_Blakey", The RICO Civil Fraud Action in Context: Reflections on Bennett v. Berg, 58 Notre Dame L. Rev. 237, 307-25 (1982). See page 32 of RICO State by State: A Guide to Litigation under the State Racketeering Statutes, John E. Floyd, Section of Antitrust Law, American Bar Association, Library of Congress Catalog Card

Number 97-70903, ISBN 1-57073-396-1,

"en.wikipedia.org/wiki/Special:BookSources/1570733961".

## V. Legal Standards

1. The factors to be weighed in considering whether to grant a temporary restraining order and a preliminary injunction are the same. *See Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008).

2. In considering whether to grant pre-trial injunctive relief, the federal court weigh the following four factors:

    a. whether the Plaintiff has demonstrated a likelihood of success on the merits;

    15 U.S.C. § 1125(a) (trademark infringement due to false designation, origin, or sponsorship);

    17 U.S.C. §§ 1203, 1204 (circumvention of copyright protection systems);

    28 U.S.C. § 1498 (unauthorized use of a patented invention by or for the United States, or copyright infringement by the United States);

    whereas the Plaintiff has demonstrated that the Smithsonian has not in good faith shown the due diligence necessary to ensuring that any architectural works or designs submitted to or in their museum design contest other than it being stated in the rules that there not be any copyrights and or trademarks on the submissions belonging to the contestant or any other third party; see Exhibit F. Plaintiff received no returned calls from any representative of the Smithsonian. Plaintiff contacted the US Copyright Office and US Patent & Trademarks Office to file complaints in 2012. Plaintiff could not find any legal representation, since most competent legal counsel either claimed conflict of interest or were afraid to confront the mighty Smithsonian Institution and its Contractors.

    b. whether the Plaintiff will suffer irreparable harm if the injunction is not issued;

        i. "a plaintiff's harm from the denial of a preliminary injunction is irreparable if it is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002); *See also Murfreesboro Medical Clinic, P.A. v. Udom*, 2004 WL 193049, at *2 (Tenn. Ct. App. 2004);

            1) Plaintiff used his own resource and investments to get the IP that he now owns. Plaintiff has lost numerous monetization ventures due to the infringement of his IP by the Defendant and has suffered irreparable harm in monetary losses and impoverishment. The Plaintiff has suffered great loss from seeing others illegally benefit from his Life work and research.

        ii. harms that qualify as irreparable that do relate to loss of money:

1) going out of business, *see Sisay v. Smith*, 2009 WL 361414 at *17 (6th Cir. 2009);

2) financial ruin, *see Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1382 (6th Cir. 1995);

3) competitive losses (non-compete agreements), *see Basicomputer Corp.*, 973 F.2d at 511-12; and

4) Interference with customer relationships (loss of goodwill), *see id.*
   The Plaintiff has lost countless numbers of potential Investors, Legal Representation, Loans Opportunities, and Brand Reputation and Project Ventures over the past years because the infringement of his Trademarks and Architectural Works.

c. whether the injunction will cause substantial harm to others if it is issued;

   i. whereas the granting of a TRO and preliminary Injunction would cause a temporary inconvenience to any individuals or third party interest in this situation, it will not cause substantial harm; wherein the Movant and Plaintiff asks the Court to allow Remedies to be offered as to not have this circumstance happen again;

   ii. whereas the Defendant attempts to legitimize their misappropriation and theft of Defendant property, by using historical attitudes on Slavery, Discrimination, and Jim Crow playing the Race Card as veil to disguise their theft and money making scheme and enterprise and worked in concert to this end; the Race Card obfuscates the fact that the Smithsonian has done harm to the Plaintiff and would harm the larger minority and majority population with the misconception that someone was trying to take away the hard won right to have a Cultural Museum in the first place. The Defendant actions are simply 'theft by taking' collusion and racketeering Rico, with plans for illegally reaping billions in future profits as reward for its illegal scheme and willful receipt of stolen property.

   iii. whereas the harm is to other parties who have been granted Intellectual or Real Property;

      1) who have been infringed upon by either Federal, State or Local Government Agencies and or by Foreign Governments or commercial entities being in danger of becoming or being considered as Eminent Domain even though those parties have defended their rightful Intellectual or Real Property is not only substantial but irreparable not only to those parties but in the standing and reputation of the United States as a leader in Real and IP Rights protection; and

      2) where the Smithsonian cannot make law by decisions to appropriate Intellectual or Real Property from individuals and it does not have the right granted municipalities such as

States, Cities, Counties or certain arms of the Federal Government (after Court Decision) to expect to have powers of Eminent Domain.

   d.  whether granting the injunction will serve the public interest;

      i.  wherein the granting of the Injunction would serve the Smithsonian itself in that with the agreed upon IP and Acquisition Governance in place owners and other proprietors of antiquities, historical objects both natural and or cultural in essence, there would be a stronger sense of respect and trustworthiness toward the Smithsonian in its dealings and acquisitions from the public or private donors/sellers; and

      ii.  wherein the granting of the injunction serves the public interest in the long run in upholding Concept of IP Rights as granted by the US Constitution and various Federal and or State Statutes, Laws, and regulations.

*See Tenn. Scrap Recyclers Ass'n. v. Bredesen*, 556 F.3d 442, 447 (6th Cir. 2009); *see also Denver Area Meat Cuters and Employers Pension Plan ex rel. Clayton Homes, Inc. v. Clayton*, 120 S.W.3d 841, 857 (Tenn. Ct. App. 2003).

## VI. Conclusion, Request for Temporary Restraining Order and Preliminary Injunction

1.  The Plaintiff, Carl R. Amos, is asking US Federal Courts to assist in upholding US rule of Law and allow his Trademarks and decades old registered Architectural Works Copyright of "Jwahmose" be used in all aspects and reference to the New Smithsonian Building so-called, NMAAHC ,now administered by the Smithsonian Institute. Preliminary Injunction and suspension of all fraudulent licenses arising from Smithsonian theft and racketeering of Plaintiffs registered Trademarks and registered Architectural Works Copyrights and patents. And reference to the Trademark building as Lens by the Smithsonian, its contractors, employees, successors and assigns.

2.  The building name & Trademark was named in honor of Plaintiffs late father (1997) and theatre was designed and created decades ago in honor of plaintiff's wife.

3.  Plaintiff asks for a TRO and preliminary injunction and monetary compensation for damages and further destruction of his business  and eventual irreparable harm through Trademark violation as a result of theft by Smithsonian, Contractors and assigns and negligent criminal acts of theft by Smithsonian Institution and Smithsonian contractors. *See Exhibit F* (the Group warrant).

4.  Plaintiff requests that Registered Trademarks, Jwahmose and Jwahmose Museum , be used in all print and audio digital visual oral references to the New Smithsonian building print, models sculptures reproductions, trinkets, stationary, souvenirs, Washington Metropolitan Area Transit Authority

SmarTrip® cards, publications, replications and media in USA and worldwide by all of Smithsonian and its successors and assigns. The Plaintiff further requests it not be called by a foreign or differently named trademark and not be referred to as Lens of History or NMAAHC, which would cause a dilution of Plaintiff's registered Trademarks Jwahmose and Jwahmose Museum and registered Architectural Works, Copyrights, and Patents.

5. Plaintiff intends to use the Trademark name JWAHMOSE for New Smithsonian bldg and on any and all items, references, trinkets and souvenirs that mention or bear the Smithsonian constructed building's image in commerce in full compliance with us Trademark Registration Requirements.

6. Plaintiff prays the courts will intervene and grant TRO and Preliminary Injunction relief and compensation for injury and wonton theft and total disregard for National and International Trademark Copyright and Patent laws.

7. Plaintiff would like to resolve matter speedily and would enter into a Licensing agreement with Smithsonian for his registered Jwahmose and Jwahmose Museum Trademark.

8. The Trademark, portfolio of Architectural Works Copyrights and Patents were included in the notification to Smithsonian and the Defendant was directly alerted as to theft and fraud by the insolvent and unscrupulous Group in 2012-2013. *See Exhibits C1-3*.

9. Plaintiff requests that US and International Trademark Law, Copyright Law and Patent Law be obeyed and respected under the rule of law and bring the Defendant to the table to settle with the Plaintiff and license his IP to the Defendant, Smithsonian Institution.

10. The Plaintiff will suffer irreparable damage and harm and destruction of rights and Trademarks if Defendant continues to take steal and infringed upon his Jwahmose Museum Trademark and Architectural Works Copyrights and violated US Trademark Laws and Copyright Laws (i.e., George Bush, Sr. 1990 Architectural Works Copyright Act). *See Exhibit C1*.

11. Plaintiff prays that all derivative works, buildings, print, audio, digital, sculpture and other forms of the Jwahmose and Jwahmose Museum and Image from 1991-1998, 2001 and 2016 to present, be honored and current Trademark Architectural Work Copyright theft and or infringements not proceed forward to the planned grand opening to further do irreparable Trademark dilution on or about September 24, 2016.

12. The Plaintiff is a US Citizen, sole Author and Creator of the Jwahmose and Jwahmose Museum Trademarks and Architectural Works of the building that now is being erroneously named the NMAAHC. Plaintiff has given notice of Trademark Infringement to the Defendant and preserves his rights and asserts in Federal Courts and International Courts, i.e., Berne Convention, to maintain his

granted Federal Trade mark Status of Jwahmose and Jwahmose Museum registered Trademarks. Exhibits and preliminary discovery are attached.

Respectfully submitted,

By: _____ Dated Sep 7, 2016

Carl Raymond Amos, Pro Se

CEO of Raemi, Inc, Ahmose, Inc

and Ahmose Imhotep Global (Incorporated in Egypt)

Carl R. Amos

8710 W. Hillsborough Ave #413

Temple Hills, FL  33615

301-455-8329

Raemi_inc@hotmail.com

## CERTIFICATE OF SERVICE

The undersigned counsel certifies that on the _____ day of _____, _____, he caused one copy each of the foregoing COMPLAINT, MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION and MOTION FOR EXPEDITED COMPLAINT AND HEARING, including memorandum in support and attachments, to be served by electronic mail, facsimile, and overnight mail on the following:

Carl Raymond Amos, Pro Se

CEO of Raemi, Inc, Ahmose, Inc

and Ahmose Imhotep Global

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRIGINIA
ALEXANDRIA DIVISION

*Carl Raymond Amas*
_____
Plaintiff,

v.

*Smithsonian Institution*
_____
Defendant.

Civil Action No. *1:16 CV 1191*

## CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared, or assisted in the preparation of this document.

*Carl Raymond Amos*
Name of *Pro Se* Party (Print or Type)

*Carl Raymond Amos*
Signature of *Pro Se* Party

Executed on: *September 19, 2016* (Date)

OR

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document.

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)